UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                       :

ADELE DURICK,                   :        **MEMORANDUM DECISION**
                                         :        **AND ORDER**
                           Plaintiff,      :
                                         :        15 Civ. 7441 (BMC)
                       - against -          :
                                         :
NEW YORK CITY DEPARTMENT OF   :
EDUCATION,                          :
                                         :
                          Defendant.     :
                                         :
-------------------------------------------------------- X

**COGAN**, District Judge.

        This case is before me on defendant's motion for summary judgment. For the reasons set forth below, defendant's motion is granted as to plaintiff's discrimination claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., and granted in part and denied in part as to plaintiff's failure to accommodate claim under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

**BACKGROUND**

        The following facts are undisputed and are viewed in the light most favorable to plaintiff. Plaintiff is a special education teacher formerly employed by the Department of Education ("DOE") at Fort Hamilton High School ("FHHS") in Brooklyn, New York. Plaintiff began her employment with the DOE in September 1978 as a special education teacher, and was assigned to FHHS in September 1991. At the start of her career at FHHS, plaintiff was primarily assigned to teach math and science for five periods of "self-contained" classes, each with approximately 15 students. In or about 2003, until her retirement on June 30, 2014, plaintiff was assigned exclusively to teach "resource room." Resource room is a class with eight students for every one

instructor and operates as a tutorial for special education students. Plaintiff's duties included writing individualized education plans ("IEPs"), setting student goals, writing lesson plans, teaching, and administering and grading tests. Plaintiff normally taught five periods of resource room but, during the last two years of her employment, plaintiff taught six periods.

During the time period relevant to plaintiff's claims, Kaye Houlihan was the Principal of FHHS, and Christine Ciccarone was the Assistant Principal of the Instructional Support Services department and plaintiff's supervisor. The first time that plaintiff expressed her desire to retire in the somewhat near future occurred in February 2013 during a conversation with Ciccarone. At that time, a new system was being implemented which created additional paperwork, and plaintiff told Ciccarone, "Look, Cicc, I will try anything you want me to do. I just want to work five more years until I'm 67." According to plaintiff, Ciccarone responded, "I didn't realize you were that old." Plaintiff stated during her deposition that, following that conversation, Ciccarone "did a complete 180. She changed." For example, Ciccarone made comments at a departmental meeting about having hired two young evaluators. In addition, Ciccarone made other references about age during department meetings with enough frequency that it upset plaintiff and others, to the point that plaintiff told Ciccarone that some of the older educators had contemplated bringing a class action for age discrimination. In response, Ciccarone stated that she was "very careful about not mentioning anything about the older people in the department."

Ciccarone made no other comments to plaintiff or to others about plaintiff's age. Houlihan did not make comments about plaintiff's age or about anyone else's age in plaintiff's presence, and plaintiff did not witness any other person at FHHS make age-related remarks besides Ciccarone.

Ciccarone observed plaintiff's lessons for the 2012-13 school year, which culminated in an annual performance review rating of "Satisfactory." Ciccarone provided written feedback to plaintiff which commended her on discussing dates and tutoring with her students, incorporating study skills into her curriculum, and maintaining contact with students' parents. Ciccarone also suggested areas in which plaintiff could improve, such as keeping consultation logs, revisiting weekly plans with students at the end of each week to allow students to reflect, and to rotating students' seating arrangements to ensure equal access to plaintiff.

Beginning with the 2013-14 school year, all DOE schools, including FHHS, were required to adopt a new teacher evaluation system called "Advance." Under Advance, teachers were to receive more frequent classroom observations than under the previous evaluation system with the aim of providing timely feedback and targeted support. Teachers were required to choose between two observation options, and would be scored in 22 teaching components on a four-point scale, with 1 being "Ineffective," 2 being "Developing," 3 being "Effective," and 4 being "Highly Effective."

Plaintiff chose the observation option under Advance that included a minimum of six informal, unannounced observations, each lasting at least 15 minutes. Ciccarone and Houlihan observed plaintiff's lessons and evaluated plaintiff under the Advance system using an evaluation form. Plaintiff's performance fluctuated throughout the 2013-14 school year. They rated plaintiff "Effective" on certain teaching components and rated "Developing" or "Ineffective" on others, with ratings for some components sometimes changing from lesson to lesson. Ciccarone and Houlihan also provided written feedback for these lessons, beginning with what appears to be the first informal observation of plaintiff's lesson on November 14, 2013, and

ending with an observation on May 30, 2014.  Plaintiff received an overall rating of "Developing" for the 2013-14 school year.

During the 2013-14 school year, plaintiff made requests to Houlihan, both personally and through representatives, for accommodations for the severe osteoarthritis plaintiff suffered in her knees.  The first request was made by plaintiff's doctor, Dr. Bruce Garner, who sent a letter on October 9, 2013, to Houlihan requesting that plaintiff be excused, due to her disability, from participation in all fire drills involving stairs.  Plaintiff was not excused from fire drills altogether, but was permitted to find another teacher who would accompany plaintiff's class during fire drills so that plaintiff could exit the building on her own and at her own pace.  Plaintiff found a teacher who accompanied her students, allowing her to use the elevator and otherwise take her time during fire drills.  At one time, plaintiff also had asked to use a designated handicapped room during fire drills, but that request was denied.

On or about March 21, 2014, plaintiff's union, on plaintiff's behalf, requested that plaintiff be assigned a parking space in the rear of FHHS.  Plaintiff did not submit medical documentation in support of the request at that time, but believed there was medical documentation in her file.  This would have included the documentation that she had submitted in relation to her request to be excused from fire drills.  In addition, plaintiff had a handicapped parking permit and placard from the Parking Permits for People with Disabilities of the NYC Department of Transportation, which requires a medical assessment every other year.

The parking spot request was denied as unreasonable.  Although there were no spaces designated as handicapped parking in the rear of the building, which also served as a delivery area, there were parking spaces.  After the request was denied, plaintiff went to Houlihan to again ask for an accommodation, having heard that other employees had received parking in the

rear of the school, and believing that Houlihan herself parked there. Plaintiff told Houlihan that

she would like to park in the back of the school in one of the spaces, which would allow her to

avoid steps altogether and to use her rollator.[1] Houlihan expressed to plaintiff that she did not

know if plaintiff was really in pain or if she was really disabled.

Approximately one to two weeks after this conversation, Houlihan again denied

plaintiff's request. Houlihan told plaintiff that her parking space would not be moved and that

plaintiff, from her then-current parking space, would either need to use the employee entrance,

which required plaintiff to go up the steps, or to use the handicapped accessible ramp to the main

entrance of the building, which was used by approximately 4,000 students. The ramp also

required plaintiff to walk a further distance and maneuver around gates. At the time, plaintiff

was using a cane and a rollator, but could not use a rollator on the stairs; plaintiff testified that

using the ramp or the steps was "brutal" and that she would be "wrecked for the rest of the day."

Plaintiff did not consider either of the two options feasible.

In addition to her duties during the regular school year, plaintiff was also available to

teach summer school, and had done so for 31 consecutive years. Unlike during the school year,

plaintiff had not taught resource room during the summer terms since 2010, but rather taught

other subjects. On June 16, 2014, Houlihan extended an offer to plaintiff to teach school at

FHHS for the 2014 summer term. Plaintiff had five business days to accept the offer. However,

less than an hour later, plaintiff received another email stating that the offer had been withdrawn.

Houlihan testified that there were no resource rooms available for that summer.

Also that spring, plaintiff received her tentative 2014-15 class schedule, which included a

total of five periods, consisting of three resource room periods and two self-contained math

---

[1] A rollator is a rolling walker with a seat.

periods. Two other resource room teachers were also tentatively assigned to teach self-contained classes.

Plaintiff raised the issue of her tentative 2014-15 class schedule in June 2014, when she told Houlihan that she was medically unable to teach both resource room and self-contained classes, because she believed that doing so would require her to move between the first and second floor to get from one classroom to another. By letter dated June 20, 2014, the DOE informed plaintiff that she was scheduled to undergo a medical examination on June 24, 2014, which had been requested by Houlihan following her conversation with plaintiff. On June 25, 2014, plaintiff filed a second grievance through her union regarding her 2014-15 class schedule, requesting five resource room classes instead of both resource room and self-contained classes. By letter dated the same day, Houlihan notified plaintiff that a grievance conference was scheduled for June 26, 2014. Plaintiff did not attend the medical examination or the grievance conference because plaintiff "knew [she] had retired."

Plaintiff testified that she believed her schedule for the 2014-15 school year had changed because Houlihan and Ciccarone "wanted to change resource room," and that it was "retaliation on [Houlihan's] part, because [plaintiff] wanted a parking spot." Plaintiff did not state that she believed the change in schedule was due to her age specifically, but stated that she knew Ciccarone wanted to get rid of her and that, despite being told that there were not enough resource room classes, there were enough students for 22 resource room classes, and thus enough for plaintiff to teach only resource room as she desired. Plaintiff did not believe that any other actions were taken against her because of her age.

During her deposition, plaintiff also stated that she knew she was retiring in February 2014, but that she had first intended to retire in September 2014. However, the union persuaded

her to retire earlier to receive her back pay in one lump sum, and plaintiff therefore retired from

the DOE with an effective date of June 30, 2014. After plaintiff retired, she filed a charge of

discrimination with the Equal Employment Opportunity Commission ("EEOC") on December

10, 2014, and received a Notice of Right to Sue letter on October 1, 2015.

Plaintiff filed this action on December 31, 2015, alleging that the DOE, Houlihan, and

Ciccarone had discriminated against her because of her age and failed to accommodate her

disability in violation of 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth

Amendment of the U.S. Constitution; the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. § 621, et seq.; and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et

seq. Plaintiff alleged that defendants' conduct resulted in her retirement, which amounted to

constructive discharge. Plaintiff also alleged a claim against the DOE under Monell v. Dep't of

Soc. Serv. of the City of New York, 436 U.S. 658, 98 S. Ct. 2018 (1978).

On June 24, 2016, I granted defendants' unopposed motion to dismiss, dismissing

plaintiff's claims against defendants Houlihan and Ciccarone and plaintiff's § 1983 claim.[2]

Defendant DOE then moved for summary judgment on plaintiff's remaining claims against it

under the ADEA and the ADA. By ECF Order dated August 8, 2016, I granted in part and

denied in part defendant's motion for summary judgment, and this Order now follows.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R.

Civ. P. 56(a), and when "the record taken as a whole could not lead a rational trier of fact to find

for the non-moving party," Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York,

---

[2] Having already dismissed plaintiff's underlying § 1983 claim, plaintiff cannot make out a Monell claim, and that claim is also dismissed. See Segal v. City of New York, 459 F.3d 207 (2d Cir. 2006).

593 F.3d 196, 200 (2d Cir. 2010) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>

<u>Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).  On a motion for summary judgment,

the court does not weigh the evidence, assess the credibility of the witnesses, or resolve issues of

fact, but determines only whether there are issues to be tried.  <u>United States v. Rem</u>, 38 F.3d 634,

644 (2d Cir. 1994).

The record must be construed in the light most favorable to plaintiff, <u>Mihalik v. Credit</u>

<u>Agricole Cheuvreux N. Am., Inc.</u>, 715 F.3d 102 (2d Cir. 2013), but "[t]he mere existence of a

scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat a motion

for summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S. Ct. 2505,

2512 (1986).  Further, "conclusory statements, conjecture, and inadmissible evidence are

insufficient to defeat [the motion]."  <u>ITC Ltd. v. Punchgini, Inc.</u>, 482 F.3d 135, 151 (2d Cir.

2007).

I.      **Age Discrimination under the ADEA**

Defendant first argues that plaintiff's claim under the ADEA must be dismissed because

plaintiff cannot make out a prima facie case that she suffered an adverse employment action due

to discrimination on the basis of her age.  It is well-established that the burden-shifting

framework set forth by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792,

93 S. Ct. 1817 (1973), applies to claims brought under the ADEA.  <u>See, e.g.</u>, <u>Delaney v. Bank of</u>

<u>Am. Corp.</u>, 766 F.3d 163, 167 (2d Cir. 2014) (citing <u>Gorzynski v. JetBlue Airways Corp.</u>, 596

F.3d 93, 106 (2d Cir. 2010)).  "Under <u>McDonnell Douglas</u>, the plaintiff bears the initial burden

of establishing a prima facie case of discrimination." <u>Id.</u>  To do so, plaintiff must establish that

(1) she was within the protected age group; (2) she was qualified for the position; (3) she

experienced an adverse employment action; and (4) such action occurred under circumstances

giving rise to an inference of discrimination. <u>Gorzynski</u>, 596 F.3d at 107 (citing <u>Carlton v. Mystic Transp., Inc.</u>, 202 F.3d 129, 134 (2d Cir. 2000)). Plaintiff's initial burden is not a heavy one. <u>Id.</u>

The Supreme Court's decision in <u>Gross v. FBL Financial Services, Inc.</u>, 557 U.S. 167, 129 S. Ct. 2343 (2009), determined that a mixed-motive analysis is inapplicable to ADEA claims, and "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA" satisfies her prima facie burden under <u>McDonnell Douglas</u> by presenting facts, which "taken in [her] favor, suffice to . . . [show that] a triable issue [exists] as to whether [her] age was a 'but for' cause of [her] termination." <u>Gorzynski</u>, 596 F.3d at 106 (quoting <u>Gross</u>, 557 U.S. at 180, 129 S. Ct. at 2353) (internal quotations omitted).

Once this burden is met, the defendant must then "articulate some legitimate, nondiscriminatory reason for its action." <u>Delaney</u>, 766 F.3d at 167 (internal citations and quotation marks omitted). When the employer meets its burden, "the plaintiff can no longer rely on the prima facie case," <u>Gorzynski</u>, 596 F.3d at 106. She "must prove that the employer's proffered reason was a pretext for discrimination." <u>McPherson v. N.Y.C. Dep't of Educ.</u>, 457 F.3d 211, 215 (2d Cir. 2006).

The parties first dispute whether plaintiff suffered an adverse employment action under the third factor of <u>McDonnell Douglas</u> to establish a prima facie case of age discrimination. "[A] plaintiff may suffer an adverse employment action if she endures a materially adverse change in the terms and conditions of employment." <u>Richardson v. New York State Dep't of Corr. Serv.</u>, 180 F.3d 426, 446 (2d Cir. 1999), <u>abrogated on other grounds by</u> <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 126 S. Ct. 2405 (2006) (internal quotation marks omitted). The change must be more disruptive than a mere inconvenience or an alteration of job

responsibilities.  Id.  A materially adverse change "might be indicated by a termination of

employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a

material loss of benefits, significantly diminished material responsibilities, or other indices . . .

unique to a particular situation."  Weeks v. New York State (Div. of Parole), 273 F.3d 76, 85 (2d

Cir. 2001).  There is no bright-line rule as to what constitutes a "materially adverse change," and

courts must review the circumstances of each case to determine whether a challenged

employment action is sufficiently significant to serve as the basis for a claim of discrimination.

Davis v. New York City Dep't of Educ., 804 F.3d 231, 235 (2d Cir. 2015) (citing Richardson,

180 F.3d at 446).

Plaintiff claims that she suffered three materially adverse changes in the terms and

conditions of her employment: (1) downgraded performance evaluations; (2) the change in

plaintiff's 2014-15 class schedule; and (3) the rescission of the offer to teach summer school for

the summer 2014 term.

A.  Adverse Employment Actions

1.  *Negative Performance Evaluations*

Plaintiff argues that, after Ciccarone removed plaintiff as a school district representative

for IEP meetings (an action that occurred outside the statute of limitations, and therefore does not

constitute an adverse employment action for the purpose of her claim), Houlihan and Ciccarone

began to downgrade plaintiff's ratings after informal observations.  However, negative

performance evaluations do not, without more, constitute adverse employment actions.  Plaintiff

attempts to argue that these negative evaluations "can lead to" disciplinary action, and possibly

termination proceedings.  Yet the evidence shows that plaintiff did not reach the necessary

overall rating level that would lead to disciplinary action or termination proceedings.  In fact,

although plaintiff was downgraded to "Developing" and "Ineffective" for some of the teaching components, she also received some improved ratings over the same period.

Moreover, plaintiff does not allege any negative effect of the evaluations she was given, other than their existence in her file. "[I]t hardly needs saying that a criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action." Weeks, 273 F.3d at 86. Without evidence to support some articulated collateral effect of negative performance evaluations, plaintiff fails to show that her downgraded performance evaluations rise to the level of an adverse employment action.

### 2. Tentative 2014-15 Class Schedule

Plaintiff also alleges that the 2014-15 change in class schedule was a materially adverse employment action because she was assigned three resource room classes and two self-contained classes, rather than five resource room classes. But she does not articulate how the change in her 2014-15 class schedule constitutes an adverse employment action. Plaintiff merely states that "the change is adverse" and that defendant was "contractually obligated" to offer plaintiff five resource room classes if they were available. But a contractual breach, even if present, does not alone mean that the change in the terms and conditions in plaintiff's employment was *adverse.* Nor can I decipher what makes this an adverse employment action from the record presented. Plaintiff has failed to produce evidence that the differentiation in class schedule made the position materially less prestigious or less suited to her skills, or that it resulted in decreased pay or other benefits. See Pacheco v. New York Presbyterian Hosp., 593 F. Supp. 2d 599, 618 (S.D.N.Y. 2009) (quoting Weeks, 273 F.3d at 87). Plaintiff's dissatisfaction with her tentative

2014-15 class schedule does not suffice to show an adverse employment action, and plaintiff therefore does not make out a prima facie case of age discrimination on this basis.

3. *Rescission of Offer to Teach Summer School*

However, although the negative performance evaluations and the tentative 2014-15 class schedule are not adverse employment actions, Houlihan's rescission of the offer to teach summer was an adverse employment action. That Houlihan rescinded plaintiff's offer to teach summer school is undisputed. Plaintiff points to no actual adverse impacts of this change, though it appears, based on portions of plaintiff's testimony, that she would have received an extra salary for teaching summer classes, making it a clear adverse employment action. Plaintiff therefore satisfies the third factor of the prima facie case of age discrimination.

B. Actions Taken "Because of" Plaintiff's Age

Plaintiff nonetheless fails to make out a prima facie case of age discrimination on the basis of the rescission of her summer school offer because, as to the fourth factor of the prima facie case, plaintiff has not offered evidence upon which a reasonable jury could find that the adverse employment action was taken "because of" her age. Plaintiff must "show more than possible age bias;" she must "adduce sufficient evidence to permit a reasonable jury to find that 'but for' [defendant's] age bias, [plaintiff] would not have been terminated." Fried v. LVI Servs., Inc., 500 F. App'x 39, 41 (2d Cir. 2012) (citing Gross, 557 U.S. at 177-78, 129 S. Ct. at 2351). This does not require plaintiff to show that age was the employer's only consideration, but rather that "the adverse employment action[] *would not have occurred without it*." Delaney, 766 F.3d at 169 (citing Fagan v. U.S. Carpet Installation, Inc., 770 F. Supp. 2d 490, 496 (E.D.N.Y. 2011)) (alteration and emphasis in original).

Plaintiff's proffered evidence shows that any discriminatory comments and actions relating to age were made by Ciccarone, and Ciccarone alone. It was Ciccarone who commented to plaintiff that she did not know that plaintiff was "that old," and who made comments at departmental meetings about hiring younger teachers.

This is important because of two additional points conceded by plaintiff – that plaintiff was offered a position at the school by Houlihan, who then rescinded it a mere hour later, and that Houlihan had never made any comments about plaintiff's age. Because Houlihan was the one who offered plaintiff the summer school position, and then rescinded that offer, but had not made any comments or acted in such a way that gave rise to an inference of age discrimination, plaintiff must provide some evidence from which a jury could infer that the rescission would not have happened "but for" plaintiff's age.

Here, plaintiff offers no evidence that Houlihan's rescission was related to plaintiff's age at all. That would require somehow connecting Ciccarone's discriminatory comments with Houlihan's actions, and plaintiff offers no evidence from which a jury could reasonably infer the connection between the two. Plaintiff proffers no evidence that Houlihan was ever aware of Ciccarone's comments, that she shared them, or that she took action against plaintiff due to Ciccarone's alleged bias (and did so in the span of less than an hour). Without this evidence, a significant link in the chain of causation is missing, and plaintiff cannot create a genuine issue of material fact that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.

Plaintiff has failed to make out a prima facie case of age discrimination, and therefore her claim under the ADEA is dismissed.

## II.     Failure to Accommodate under the ADA

Defendant next argues that plaintiff's remaining claim for failure to accommodate her disability in violation of the ADA, must be dismissed because she was not discriminated against or denied any reasonable accommodation.[3]  In order to establish a failure to accommodate, plaintiff must demonstrate that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of her disability; (3) with reasonable accommodation, plaintiff could have performed the essential functions of the job at issue; and (4) the employer refused to make such accommodations.  McMillan v. City of New York, 711 F.3d 120, 125-26 (2d Cir. 2013) (citing McBride v. BIC Consumer Products Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009)).  Plaintiff need not show an adverse employment action to state a claim for failure to accommodate.  See Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006).

A reasonable accommodation is one that "enable[s] an individual with a disability who is qualified to perform the essential functions of that position . . . [or] to enjoy equal benefits and privileges of employment." 29 C.F.R. § 1630.2(o)(1)(ii)-(iii).  A reasonable accommodation may include, among other things, "a modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, reassignment to a vacant position."  McBride, 583 F.3d at 97 (citing 42 U.S.C. § 12111(9)(B) and Jackan v. New York State Dep't of Labor, 205 F.3d 562, 566 (2d Cir. 2000)).  Plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment, and bears only the "light burden" of production regarding the reasonableness of the

---

[3] The parties both discuss whether Houlihan "discriminated" against plaintiff, but plaintiff has not asserted a separate disability discrimination claim under the ADA.  She alleges only that she was discriminated against on the basis of her disability insofar as she was denied a reasonable accommodation.

proposed accommodation. Id. at 97, 97 n. 3. A plaintiff's burden of production is satisfied if "the costs of the accommodation do not on their face obviously exceed the benefits." Id. at 97 n. 3. The defendant then bears the burden of persuasion that the accommodation "would present undue hardships and would therefore be unreasonable." McMillan, 711 F.3d at 128. An "undue hardship" is "an action requiring significant difficulty or expense." 42 U.S.C. § 12111(10)(A); see also McMillan, 711 F.3d at 128. However, when an employer has offered or made some accommodation for an employee's disability, summary judgment is appropriate if, on the undisputed record, the accommodation was plainly reasonable. See Noll v. Int'l Bus. Machines Corp., 787 F.3d 89 (2d Cir. 2015).

The parties do not dispute that plaintiff has established the first three elements of a failure to accommodate claim. As to whether the employer refused to make a reasonable accommodation, the parties dispute the number of different accommodation requests plaintiff made, and whether those requests were reasonably denied. Viewing the record in the light most favorable to plaintiff, plaintiff made a total of three accommodation requests, and two of those requests were denied. The first request, for an accommodation during fire drills, was accommodated to plaintiff's satisfaction, and is not at issue here. The other two requests – for a change in her 2014-15 class schedule, and for a parking space at the back of the school – plaintiff contends were reasonably made and thereafter unreasonably denied.

  a.  *Failure to Accommodate 2014-15 Class Schedule*

Defendant disputes whether plaintiff made a reasonable request for an accommodation for her class schedule. For this point, defendant notes that plaintiff herself testified that, other than the fire drill and parking space accommodations, she did not make any other requests. Further, Houlihan also testified that these were the only two accommodation requests, and that

plaintiff's grievance about her tentative 2014-15 class schedule was "a grievance of class assignment, not to make an accommodation based on a disability." However, plaintiff also testified that she went to Houlihan to specifically discuss her inability to teach both resource room and self-contained classes due to her disability, and it is reasonable to assume Houlihan saw it that way, too, because she scheduled plaintiff for a medical examination.

Regardless of whether plaintiff reasonably requested the accommodation on the basis of her disability, the record shows that plaintiff abandoned this request by failing to attend the medical examination and instead choosing to retire two days later. Plaintiff cannot unreasonably discontinue a process through which she could have been accommodated and then use the abandoned request as the basis for a failure to accommodate claim. See Nugent v. St. Lukes–Roosevelt Hosp. Ctr., 303 F. App'x. 943, 946 (2d Cir. 2008). The statutory scheme under the ADA contemplates an interactive process by which the employee and employer may "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3); Jackan, 205 F.3d at 566.

Although courts have struggled to analyze cases where the interactive process has broken down, in the instant case, it is not a difficult to determine why the interactive process was unsuccessful. Plaintiff refused to interact in the process altogether. Plaintiff argues that Houlihan wanted plaintiff to submit to a medical evaluation to embarrass or humiliate her, implying that Houlihan's request for a medical examination was made in bad faith. If this were the reason plaintiff failed to submit to the medical examination, a jury could well reason that it was not that plaintiff abandoned the interactive process, but that Houlihan used the process to deny the requested accommodation.

However, plaintiff's failure to submit to the process was not because of the unreasonableness of Houlihan's request. Plaintiff conceded during her deposition that she did not attend a medical examination because she had already decided to retire. The retirement, in turn, was not related to Houlihan scheduling plaintiff for a medical examination.

This is clear first from the timing of her decision. Plaintiff testified that she "knew [she] was retiring in February," but she did not approach Houlihan about her tentative schedule for the 2014-15 term until June. Therefore, plaintiff knew that she was planning to retire before the examination was scheduled for June 24, 2014.

Second, plaintiff also testified specifically that she made the decision to retire because of Houlihan's refusal to accommodate her parking space request and her negative comments at that time about plaintiff's pain:

Q: And you had made up your mind in February –

A: Yeah.

Q: – of 2014 that you were going to retire?

A: Yeah.

Q: Was that based on any specific action at that time?

A: When your principal tells you you're not in pain, how do I really know you're in pain. And when they give a parking spot to a guidance counselor, because he injured his finger, yeah.

[. . .]

Q: Did you say anything to [Houlihan]?

A: Yeah.

Q: What did you say?

A: I said to her I'm in pain. And she said, well, I don't really know that.

Q: Did she ever refer you to a doctor?

A: She sent me for a physical.  When I knew I had retired, so I postponed it.

Plaintiff did not testify to any issue with the medical examination itself, or even that the medical examination was the last straw, causing her to retire.  Plaintiff's stated reason for retiring and the timing of her decision demonstrate that plaintiff's retirement was not connected to the request for a medical examination; it was related to a previous request for accommodation, that is, for a parking space, and Houlihan's response to that request.  At the time Houlihan sent plaintiff in for a medical examination, plaintiff already knew she was retiring due to Houlihan's past actions, and that was why plaintiff did not appear.  Plaintiff's choice to terminate the accommodation process belies any claim that defendant failed to accommodate that request, where the cause of plaintiff's withdrawal from the process was independent of what plaintiff believed was Houlihan's bad faith in initiating it.  Plaintiff therefore cannot make a prima facie case for a failure to accommodate on the basis of her tentative 2014-15 class schedule.

*b.  Failure to Accommodate Parking Space Request*

Nevertheless, plaintiff does state a claim on the basis of defendant's unwillingness to accommodate her request for a parking space at the rear of the school that would have allowed her to avoid steps and take the shortest distance to the entrance to the school.  As to this accommodation request, defendant disputes whether Houlihan denied a reasonable accommodation for plaintiff.

Defendant attempts to avoid the undue burden test applicable to denials of accommodation by arguing summary judgment is appropriate because the accommodation it had already provided was a "plainly reasonable" one.  Determination of whether an existing accommodation is plainly reasonable, of course, occurs only in cases where some type of

accommodation has already been offered or given to the plaintiff. Here, plaintiff used a handicapped parking pass and placard to park in handicapped parking at the school. When plaintiff asked to park at the rear of the school, Houlihan denied this request. Instead, plaintiff was "offered" two options, both of which were options already available to her before she made the request: use the stairs at the faculty entrance, or use the ramp at the main entrance. Neither option changed her parking space to put her closer to the entrance she desired at the rear of the school, which did not have a long ramp or stairs.

Whether or not the accommodation request was denied outright versus denied only as to the specific accommodation requested by plaintiff changes the relevant issue of fact at summary judgment. Where a plaintiff claims she was denied an accommodation, the court looks at the plaintiff's request for accommodation and determines whether the plaintiff has met her "light burden" to show that her request was reasonable on its face. In cases where a plaintiff claims she was offered or given an unreasonable alternative accommodation, the court looks to the alternative accommodation to determine whether it was plainly reasonable.

In either formulation of the factual issue, plaintiff's failure to accommodate claim survives summary judgment. Assuming that defendant's "offer" was an alternative accommodation rather than an outright denial, the record before me does not evidence that plaintiff's then-current parking space was reasonable as a matter of law. It is true that employers are not required to provide "a perfect accommodation or the very accommodation most strongly preferred by the employee." Noll, 787 F.3d at 95; see also Fink v. N.Y.C. Dep't of Personnel, 53 F.3d 565, 567 (2d Cir. 1995). Nevertheless, employers are to give "primary consideration" to an employee's preference, 29 C.F.R. § 1630 app., and an accommodation must be effective for it to be reasonable. Noll, 787 F.3d at 95. Where an accommodation is made, whether that

accommodation is reasonable is a fact-specific question that often must be resolved by a factfinder. See id. at 94 (citing Wernick v. Fed. Reserve Bank of N.Y., 91 F.3d 379, 385 (2d Cir. 1996)).

Such is the case here. Plaintiff's disability and the limitations it placed on her movement is evidenced through past accommodations, others' knowledge of her limitations and the informal assistance they provided, discussions with Houlihan, and plaintiff's testimony as to why her current parking space was ineffective and why she requested an accommodation. That evidence is sufficient to raise an issue of fact as to whether the parking space she currently had was effective, i.e., that it allowed her to "perform the essential functions of [her] position . . . [or] enjoy equal benefits and privileges of employment." 29 C.F.R. § 1630.2(o)(1)(ii)-(iii).

Defendant's reliance on Noll is therefore misplaced. In Noll, the plaintiff, who was deaf, requested an accommodation for captioning work videos, but was given an accommodation whereby ASL interpreters were provided to the plaintiff on demand whenever the plaintiff watched a video. In affirming summary judgment for the defendant, the Second Circuit stated that an accommodation for deafness cannot be rendered ineffective "by the need to divide visual attention, without more," and that merely tiring or annoying the plaintiff was not a disadvantage that would render the employer's accommodations ineffective. Noll, 787 F.3d at 96.

Plaintiff here has created an issue of material fact as to the existence of that something "more" that the Second Circuit described in Noll. It is not just that plaintiff was tired from having to walk from her then-current parking space; it was that doing so was, in her words, "brutal" and "wrecked" plaintiff for the rest of the day. There is a substantial and meaningful difference between tired eyes, as in Noll, and potentially severe physical pain, as here.

In addition, plaintiff has satisfied the light burden of production regarding the reasonableness of her proposed accommodation. In this case, plaintiff had merely requested a parking space in the rear of the building, where she testified that at least six parking spaces were available and where Houlihan and other senior school officials parked. Notably, defendant does not argue that there were no parking spaces; it merely asserts that "there are no parking spaces for disabled people (so called 'handicapped parking') in the rear of the FHHS school building." Such a characterization makes clear that there <u>were</u> parking spaces in the rear of the building, but that none of them were specifically for the handicapped.

This is beside the point. "There is nothing inherently unreasonable about requiring that an employer accommodate an employee by providing a reserved parking space." <u>Price v. City of New York</u>, 797 F. Supp. 2d 219 (E.D.N.Y. 2011). If a parking space existed that plaintiff could have used, it is irrelevant whether it also had a handicapped designation; plaintiff obviously would have been able to park in both handicapped and regular parking spaces. The question would be whether the request was for a "reasonable" accommodation, and plaintiff has met her burden to show that "the costs of the accommodation do not on their face obviously exceed the benefits." <u>McBride</u>, 583 F.3d at 97 n. 3.

Defendant conflates plaintiff's request for a parking space in the spring semester of 2014 with her request for a change in her tentative class schedule for the 2014-15 school year. Defendant contends that plaintiff did not provide medical records, and therefore Houlihan scheduled a medical examination. As discussed above, the medical examination was scheduled in relation to a requested change for the 2014-15 class schedule; by that time, Houlihan had already denied plaintiff's request for a parking space and, as plaintiff remembers it, questioned whether plaintiff was disabled at all.

That plaintiff failed to submit medical documentation does not mean that there is no material factual issue as to whether FHHS provided a reasonable accommodation. Defendant appears to argue that Houlihan failed accommodate plaintiff on the grounds that Houlihan did not know of the disability or, at the very least, did not know the extent of plaintiff's disability.

Putting aside the fact that, based on the record, Houlihan did not attempt to determine the extent of plaintiff's limitations until June 2014, plaintiff has put sufficient evidence in the record whereby a jury could find that Houlihan knew of plaintiff's disability and denied plaintiff's request for a reasonable accommodation. Defendant's own statement of facts acknowledges that plaintiff's doctor had submitted a letter to Houlihan in the fall semester of the 2013-14 school year, requesting the fire drill accommodation. Plaintiff also testified that she and Houlihan had discussed her disability in the context of monthly staff meetings:

> Q: And other than being denied the parking space in the rear of the school, was there anything else that made you upset with Principal Houlihan?
>
> A: Every time we had a faculty meeting she – okay. You can go in on the first floor from the main lobby or from the back going downstairs and going in, but it was a decline. So down the stairs, I would actually come in from the thing and sit in the very first seat in the back and she would always come and say, "I want you to move up." And I said, "I'm sorry, I can't because if I moved up it would have been brutal coming back up that incline to leave.["]  "And every faculty meeting I'd like you to move, Ms. Durick."
>
> Q: And how often were faculty meetings?
>
> A: Once a month. To the point where she actually got the yellow tape and sectioned off that part and you can't sit there, and I broke off the tape and I sat there anyway.

> Nor does defendant dispute that plaintiff used handicapped parking; indeed, defendant

relies on handicapped parking as a reason why Houlihan's denial was acceptable under the ADA, that is, because the handicapped parking plaintiff already had was a reasonable accommodation. It cannot also argue that Houlihan did not know plaintiff had a disability; either Houlihan knew

about the disability at the time plaintiff requested the parking space, or she did not. Further,

plaintiff has set forth evidence from which a jury could reasonably infer that plaintiff's disability

was apparent to faculty and students alike. Whether defendant properly denied plaintiff's request

as unreasonable is a fact for the jury to decide.

Regardless of whether the issue is that her request was reasonable on its face or that

defendant's accommodation was not plainly reasonable, plaintiff's evidence has shown facts in

dispute as to both.

## III.    Constructive Discharge

Having found that plaintiff's failure to accommodate claim survives defendant's motion

for summary judgment, I also find that plaintiff has produced sufficient evidence to create a

genuine issue of material fact as to whether the failure to accommodate plaintiff's claim

constituted constructive discharge. Plaintiff has offered evidence upon which a reasonable jury

could find that Houlihan's deliberate denial of plaintiff's requested parking accommodation

made plaintiff's working conditions intolerable, that is, that her working conditions would have

been "so unpleasant that a reasonable person in [plaintiff's] shoes would have felt compelled to

resign." Morris v. Schroder Capital Mgmt. North America, Inc., 481 F.3d 86, 89 (2d Cir. 2007).

Plaintiff may therefore pursue damages for her failure to accommodate claim under a theory of

constructive discharge.

## CONCLUSION

Defendant's motion for summary judgment is granted in part and denied in part as set forth above.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____
U.S.D.J.

Dated:  Brooklyn, New York
       August 17, 2016